FILED
CLERK US DISTRICT COURT
JUL 29 2005
CENTRAL DISTRICT OF CALIFORNIA
BY         DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAGNEA TESHOME, | CV05-3664 FMC (PLWx) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION FOR ORDER STAYING LITIGATION AND COMPELLING ARBITRATION** |
| O'MELVENY & MYERS, LLP | |
| Defendant. | |

This matter is before the Court on Defendant's Motion for Order Staying Litigation and Compelling Arbitration (docket no. 6) filed June 23, 2005. The Court has read and considered the moving, opposition and reply documents submitted in connection with this motion. For the reasons and in the manner set forth below, the Court hereby DENIES the motion to compel arbitration and orders a jury trial on the issue of formation of agreement to arbitrate.

**I. Background**

This civil employment action concerns an arbitration agreement promulgated by Defendant, O'Melveny & Myers ("O'Melveny"). The following summary is based on Plaintiff's complaint and the parties' briefs

DOCKETED ON CM
JUL 29 2005

17

Dockets.Justia.co

submitted in connection with this motion.

Plaintiff, Dagnea Teshome ("Teshome") has been an employee of O'Melveny from November 26, 2001 to the present. Complaint at 2. On August 1, 2002, O'Melveny distributed a document outlining the firm's Dispute Resolution Program ("DRP" or "arbitration agreement") to all its employees through interoffice mail. Defendant's Motion at 2. The next day, O'Melveny's Human Resources Department sent an email to all employees stating that the DRP had been distributed and instructing anyone who had not received the handout to contact Tania Hanna in the Human Resources Department. Hanna Declaration at Ex. B. Teshome does not recall receiving the DRP nor the email follow-up. Declaration of Teshome at 2.

The DRP includes a four-step process through which employees must resolve employment disputes between O'Melveny and its employees. *Id*. The DRP is intended by O'Melveny to cover all disputes between O'Melveny and its employees "in any way arising out of, relating to, or associated with [the employee's] employment with [O'Melveny] or the termination of [employee's] employment." *Id*. The last step in the DRP process is final and binding arbitration of any claim not resolved in the previous three steps. *Id*.

The DRP states that it "applies to and is binding on all employees . . . hired by - or who continue to work for - the firm on or after November 1, 2002," three months after the initial distribution. *Id*. O'Melveny contends that by this language in the DRP, Teshome agreed to the provisions of the DRP by continuing to work for O'Melveny after November 1, 2002.

Teshome filed this action May 17, 2005 asserting ten causes of action arising out of his allegations of racial discrimination in connection with his employment by O'Melveny. Teshome's suit involves the following claims:

2

racial discrimination under 42 U.S.C. § 2000, *et seq.* (Title VII), racial discrimination in violation of California Government Code § 12940, *et seq.* (FEHA), harassment in employment based on race under FEHA, retaliation for having opposed discrimination based on race pursuant to Title VII and FEHA, wrongful demotion in violation of public policy, wrongful denial of promotion in violation of public policy, failure to prevent discrimination based on race under FEHA, failure to investigate discrimination based on race under FEHA, and intentional infliction of emotional distress. O'Melveny responded by filing this motion to stay the litigation and compel arbitration in accordance with the DRP and pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act ("FAA") §§ 3, 4.[1]

## II. Existence of An Agreement to Arbitrate

### A. Federal Arbitration Act

The purpose of the FAA is to overcome courts' historic reluctance to enforce arbitration agreements. *See Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 270 (1995). Through the FAA, Congress established a liberal federal policy in favor of arbitration and placed arbitration agreements on equal footing with other contracts. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The FAA directs federal courts to stay litigation and compel parties to arbitrate their disputes when those parties have formed an agreement to do so. *See* 9 U.S.C. § 3.

However, before a court will compel parties to arbitrate, the court must first determine that the parties have in fact *agreed* to arbitrate. *See* 9 U.S.C. §§ 3, 4. Section 4 explicitly states, "upon being satisfied that the making of the

---

[1] "[T]he FAA has the same application to state law claims . . . as it does to Title VII." *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1302 n.1 (9th Cir. 1994).

3

agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Thus, this Court cannot compel Teshome to arbitrate his claims against O'Melveny until it is satisfied that he has actually agreed to do so.

In determining the existence of an agreement to arbitrate, this Court "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The U.S. Supreme Court has made it clear that the Court, and not an arbitrator, should determine whether a contractual agreement to arbitrate was formed. In discussing the FAA, the Court stated that "(w)hen there is ... an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *see also AT&T Technologies Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415 (1986) ("[T]he question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").[2]

**B. Application to the Present Case**

In this case, the parties disagree as to whether Teshome accepted the

---

[2] California law mirrors federal law in this respect. *See Romo v. Y-3 Holdings, Inc.*, 87 Cal.App.4th 1153, 1158 (Ct. App. 2001)("[T]he right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract . . . There is no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate.")(internal citations omitted).

4

terms of the DRP, and this Court cannot compel him to arbitrate until that issue is resolved. This Court agrees with Teshome that, because he has so requested, he is entitled to a jury trial on the issue of formation of the agreement to arbitrate. The FAA explicitly provides for a trial on the issue of contract formation regarding arbitration agreements. "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The statute also allows for a jury trial, if, as in this case, a jury is requested. "If no jury trial be demanded by the party alleged to be in default . . . the court shall hear and determine such an issue." *Id.*; *see also Prima Paint*, 388 U.S. at 414 ("The court and a jury are to determine both the legal existence and scope of such an agreement [to arbitrate].").

As described earlier, Teshome refutes O'Melveny's allegation that he received the DRP or was aware that he should have received it. O'Melveny has provided some evidence that it distributed the DRP to all its employees, including Teshome, and that it sent follow-up emails asking any employee who had not received the DRP to contact the human resources department. Hanna Declaration Exs. C, D, E. Teshome has responded to this evidence with a declaration contesting those facts, stating that he does not believe he "ever received" either the email or the DRP document. Teshome Declaration at 2. This creates a question of fact that should be decided by a jury. The Ninth Circuit stated the following:

> "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement. The

5

> district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise."

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)

### C. Scope of the Jury Trial

California law recognizes the formation of employment-related contracts through implied acceptance, such as is alleged by O'Melveny to have occurred here.[3] In *Craig v. Brown & Root, Inc.*, 84 Cal.App.4th 416, 419 (Ct. App. 2000), an agreement to arbitrate was created by facts very similar to those in the present case. The employer disseminated a Dispute Resolution Program to all employees and informed them that all would be bound by it, just as O'Melveny claims to have done. *Id.* In *Craig*, the court found that acceptance could occur as "implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer." *Id.* at 420. In this case, the Court finds as a matter of law that the DRP is binding if Teshome received the DRP in such a way as to put him on notice that he would be bound by the terms. The jury will be limited to deciding whether the terms of the DRP were known to Teshome and so that he was agreeing to its terms by continuing to be employed by O'Melveny three months after receiving it.

### III. Validity of the Agreement

Although the Court acknowledges that the FAA requires it to "proceed

---

[3] For purposes of this order, the Court defines "implied acceptance" as the situation where one party presents an offer of a contract to another party and states that acceptance will be effective upon some conditional performance by the other party. When the other party performs that specific act with knowledge that doing so will bind him or her to certain terms, a contract has formed.

6

1  summarily" to a jury trial on the question of formation, the Court also
2  resolves the issue of the validity and enforceability of the DRP. This is done
3  in the interest of judicial economy. If the arbitration agreement in this case
4  is not valid and enforceable, a jury trial on the question of whether the
5  parties agreed to it would be unnecessary. The Court finds the DRP to be a
6  valid arbitration agreement on its face.

**A. The Federal Arbitration Act and Unconscionability**

The FAA declares written provisions for arbitration "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must enforce an agreement to arbitrate unless the agreement is invalid according to principles that would invalidate *any* contract. *Adams*, 279 F.3d at 892. "In determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Thus, "general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Id; see also Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-87. Therefore, this Courts looks to California law to determine the validity of the arbitration agreement between California employer, O'Melveny, and its California employee, Teshome. *Id.*

**B. Unconscionability**

Under California law, unconscionability has two components: procedural and substantive unconscionability. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). Therefore, for a contract to be invalid in California, it must be both procedurally and

substantively unconscionable.[4] *Id.* *See also Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1533 (Ct. App. 1997)("The prevailing view is that these two elements must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.")

### C. Procedural Unconscionability

There can be two forms of procedural unconscionability, "oppression" and "surprise." *Armendariz*, 6 P.3d at 690. Oppression focuses on the inequality of bargaining power between two parties to a contract "which results in no real negotiation and an absence of meaningful choice." *Stirlen*, 51 Cal.App.4th at 1532. Surprise focuses on the "extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form by the party seeking to enforce the disputed terms." *Id.*(internal citation omitted).

### i. Surprise

O'Melveny's DRP does not "surprise" its employees and thus, is not procedurally unconscionable on these grounds. The cases involving surprise differ significantly from the present case on their facts.

In *Kinney v. United Healthcare Servs., Inc.*, 70 Cal.App.4th 1322, 1330 (Ct. App. 1999), the contract involved "surprise" because the employee was pressured to sign an acknowledgment form without being given time to read through the voluminous employee handbook wherein an arbitration

---

[4] These two elements need not, however, be present to the same degree. *Armendariz*, 6 P.3d at 690. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

8

agreement was hidden in confusing language. In *Ellis v. McKinnon Broad. Co.*, 18 Cal.App.4th 1796, 1804 (Ct. App. 1993), the Court found "surprise" where the contract containing the unconscionable provision was presented as a "mere formality" and the employee was given no time to read over the contract before signing. In both cases, surprise is present because the employee could not have learned of the terms of their agreement until after he or she agreed to be bound.

No such surprise is present in this case. The DRP was sent as a stand-alone mailing and no provision of the arbitration agreement appears to be unfairly hidden within the language of the DRP. The employees were given three months to read through the agreement and ask any questions they might have concerning the DRP process.

Teshome also argues that a provision in a separate employee handbook supplies the surprise in the DRP agreement. The provision at issue declares that O'Melveny "retains the right to change, at anytime, the terms and conditions of your employment with or without cause and with or without notice, including but not limited to termination, demotion, promotion, transfer, compensation, benefits, duties and location of work." Hanna Declaration at Ex. A. This employee handbook is a completely separate document which states, in the same paragraph as quoted above, that the "handbook is not intended as, and shall not be considered as a contract of employment." *Id.* The Court does not find that this separate, non-contractual handbook provision even applies to the DRP. Nothing in the DRP incorporates any portion of the employee handbook nor even refers to the handbook. Therefore, the Court rejects the assertion that this handbook provision creates procedural unconscionability in the DRP.

**ii. Oppression**

The Court finds this agreement to be obviously procedurally unconscionable under California law regarding oppression. O'Melveny disseminated the DRP through interoffice mail to each employee with no negotiation nor any possibility for employees to reject the arbitration process laid out therein.[5] The DRP itself announces that the DRP "applies to and is binding on all employees (including associates) hired by - or who continue to work for - [O'Melveny] on or after November 1, 2002." Hanna Declaration at Ex. B. The accompanying cover sheet states "[O'Melveny] has adopted a new Dispute Resolution Program." *Id.* This clear affirmative language demonstrates that O'Melveny did not intend to allow any employee to negotiate the terms of the DRP nor to choose not to agree. O'Melveny acknowledges in their moving papers that the "meaningful choice" available to Teshome and the other employees was to quit working for O'Melveny and look for employment elsewhere.

California case law is quite clear that a contract presented on a "take-it or leave-it" basis is a contract of adhesion. "When the weaker party is presented the clause and told to "take it or leave it" without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present." *Szetela v. Discover Bank*, 97 Cal.App.4th 1094, 1100 (Ct. App. 2002).

In *Armendariz*, the employees were faced with a mandatory arbitration agreement that they had to sign prior to employment as part of the application process. 6 P.3d at 674-675. In that case, the California Supreme

---

[5] The Court again recognizes that these facts are in dispute. For purposes of the discussion of procedural unconscionability, the Court assumes that O'Melveny's version of these facts are correct.

10

1  Court found that process to be procedurally unconscionable because "the
2  arbitration agreement [stood] between the employee and necessary
3  employment, and few employees are in a position to refuse a job because of
4  an arbitration agreement. *Id.* at 690. This Court finds it even more
5  oppressive to be faced with a take-it or leave-it arbitration agreement from
6  one's present employer. If few employees are able to refuse a job because of
7  an arbitration agreement, surely even fewer are in a position to quit their
8  jobs and face uncertain unemployment. *See also Abramson v. Juniper
9  Networks, Inc.*, 115 Cal.App.4th 638, 663 (Ct. App. 2004) (Finding it
10 procedurally unconscionable for employee to have no choice as to whether to
11 accept or reject the arbitration agreement as a condition of employment);
12 *McManus v. CIBC World Mkts. Corp.*, 109 Cal.App.4th 76, 91 (Holding it
13 procedurally unconscionable where employee was advised that "he would
14 not be hired if he did not sign" the arbitration agreement).
15      O'Melveny suggests that because Teshome was given an "opportunity"
16 of three months to look for marketplace alternatives that Teshome had a
17 meaningful choice in accepting the arbitration agreement. The Court rejects
18 this argument. Where California courts have repeatedly declared that it is
19 procedurally unconscionable to present an adhere-or-reject arbitration
20 agreement to job applicants who typically are in the process of applying to
21 and considering jobs with multiple employers, there cannot be less
22 unconscionability in presenting the same type of agreement to a current
23 employee, regardless of the time allotted to search for alternative
24 employment.

25 **D. Substantive Unconscionability**
26      Despite determining that the DRP is procedurally unconscionable, the
27
28                                         11

Court still may not invalidate this arbitration agreement unless it is also substantively unconscionable. *Armendariz*, 6 P.3d at 690. Generally, substantive unconscionability focuses on whether the substantive provisions of the contract are "one-sided" or "overly harsh." *Id*. California courts have qualified this slightly, and allow a certain degree of one-sidedness to exist in a contract where the lack of mutuality is justified by a "legitimate commercial need." *Id*. "However, unless the 'business realities' that create the special need for such an advantage [of one-sidedness] are explained in the contract itself . . . it must be factually established." *Stirlen*, 51 Cal.App.4th at 1536.

### i. Presumption of Substantive Unconscionability

Teshome points to a lone Ninth Circuit case in support of his assertion that there is a presumption of unconscionability covering arbitration agreements. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1174 (9th Cir. 2003) ("Thus, we conclude, under California law, a contract to arbitrate between an employer and an employee . . . raises a rebuttable presumption of substantive unconscionability.") However, *Ingle* notwithstanding, this assertion directly contradicts the central purpose of the FAA as well as established federal and state case law. The Supreme Courts of both the United States and California have stated unequivocally that arbitration agreements must be treated no differently than any other contract. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts.")(internal quotation omitted); *Perry v. Thomas*, 482 U.S. 483, 492 (1987) ("Nor may a court rely on the uniqueness of an agreement to

arbitrate as a basis for a state-law holding that enforcement would be unconscionable."); *Armendariz*, 6 P.3d at 693 (recognizing that adopting any approach which assigns a "suspect status to arbitration agreements" would fly in the face of the U.S. Supreme Court's decision in *Doctor's Assocs.*). The Court therefore declines to follow *Ingle*, and disagrees that any presumption of substantive unconscionability exists regarding arbitration agreements under either California or federal law.

### ii. Unilateral Right To Modify

The Court has already disposed of this assertion by determining that the reserved right to modify all terms of employment contained in the employee handbook does not apply to the DRP. There is nothing contained in the arbitration agreement itself that reserves O'Melveny's right to alter or terminate the DRP nor anything which incorporates such a reservation into the DRP from the employee handbook.

### iii. Statute of Limitations

Teshome asserts that the one-year statute of limitations contained in the DRP is substantively unconscionable because it would deprive Teshome of the benefit of the continuing violation doctrine available in FEHA suits. This argument is not well taken. The DRP requires that "notice must be given [to O'Melveny] within one (1) calendar year from the time the condition or situation providing the basis for the Claim is known to the employee or with reasonable effort on the employee's part should have been known to him or her." Hanna Declaration at Ex. B. This notice provision does not bar Teshome from recovering any relief available to him[6], but

---

[6] Nothing in the agreement implies that relief is limited in any way by this notice provision, or by any other provision.

rather operates as a timely notice provision. The DRP itself states quite clearly that if the employee prevails in an arbitration, "the employee can be awarded anything he or she might seek through a court of law." *Id.*

Furthermore, a one-year statute of limitations would hardly be substantively unconscionable. In *Martinez v. Master Protection Corp.*, 118 Cal.App.4th 107, 117 (Ct. App. 2004), the court disapproved of a six-month statute of limitations contained in an arbitration agreement which "vastly shortened" the statute of limitations that would cover his claims in court. Here, the one-year limit is actually longer than the 180 days allowed by Title VII before notice must be given to the Equal Employment Opportunity Commission and is exactly equal to the one-year limit under FEHA. *See* 42 U.S.C. § 2000e-5; Cal. Gov. Code § 12940, *et seq.* Teshome's remaining claims of wrongful demotion and denial of promotion in violation of public policy as well as his claim of intentional infliction of emotional distress appear to be covered by the two-year statute of limitations created in Cal. Code Civ. Proc. § 335.1; *see also* Justice Ming W. Chin, et al., California Practice Guide: Employment Litigation § 16:440 (Rutter Group 2002). Accordingly, a contractually agreed upon, one-year statute of limitations is not "overly harsh" to the point of unconscionability.

**iv. Confidentiality Clause**

The Court agrees with Teshome that the confidentiality provision contained in O'Melveny's arbitration agreement is unconscionable. The DRP requires that

> "all claims, defenses and proceedings (including . . . the existence of a controversy and the fact that there is a mediation or an arbitration proceeding) shall be treated in a confidential manner by the mediator, the Arbitrator, the parties and their counsel, each of their agents and employees and all others acting on behalf of or in concert with them."

14

Hanna Declaration at Ex. B.[7] The Ninth Circuit recognized the importance of testimony from other employees in proving employment discrimination claims. *See Heyne v. Caruso*, 69 F.3d 1475, 1479-80 (9th Cir. 1995). Without this testimony, employees would often be unable to prevail on discrimination claims because direct evidence of employer's mental processes is rare. *Id.* at 1479. An arbitration agreement that demands secrecy prevents claimants from speaking with other employees to gauge their awareness of any discrimination. A confidentiality clause interferes with their ability to prove their case and thus unfairly changes the rights available to the claimant were they able to bring their claim in court.

Additionally, a confidentiality clause disproportionately favors the employer company over the individual employee. *See Ting v. AT&T*, 319 F.3d 1126, 1151 (9th Cir. 2003) ("Although facially neutral, confidentiality provisions usually favor companies over individuals."). Because employers will have occasion to defend similar claims repeatedly and employees typically bring just one suit against the employer, a confidentiality provision in an arbitration agreement prevents employees from gathering information on precedent while the employer has knowledge of all previous claims as a participant in those previous proceedings.

O'Melveny's confidentiality provision is substantively unconscionable.

**v. O'Melveny Reserves the Right Unto Itself to Seek Court Relief**

In the DRP, O'Melveny reserves its own right to bring claims in court against employees for "injunctive and/or other equitable relief for violations of the attorney-client privilege or work product doctrine or the disclosure of

---

[7] That the DRP makes an except for whatever "may be necessary to enter judgment upon the award or to the extent required by applicable law" does not save this provision from unconscionability.

other confidential information." Hanna Declaration at Ex. B. Teshome claims that this provision is substantively unconscionable because of the "asymmetry" of allowing O'Melveny to go to court while forcing him into arbitration.

First, such "asymmetry" does not exist. Although O'Melveny does in fact give itself an exception to the arbitration agreement for claims relating to breaches of confidentiality, the DRP also provides exceptions for some claims brought by employees. Employees may bring claims relating to workers' compensation benefits and unemployment benefits in court. Also, the DRP explicitly binds O'Melveny to arbitration for claims other than claims for injunctive relief relating to disclosures of confidential information. The California Supreme Court requires just a "modicum of bilaterality," and the DRP at issue here certainly meets that threshold. *Armendariz*, 6 P.3d at 692.

Second, "[a]s has been recognized, unconscionability turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." *Id.* (internal citations omitted). Any apparent lack of mutuality by O'Melveny's reservation of access to courts on breach of confidentiality is justified by O'Melveny's legal practice. In its motion, O'Melveny notes the statutory and ethical obligations binding it, as a law firm, to protect the confidential information it obtains regarding its clients.[8] The Court accepts this

---

[8] The Court is aware that *Stirlen* requires any "business realities" justifying non-mutuality to be either explained in the contract itself, or factually established. While neither is true in this case, the *Stirlen* court's rationale for that rule makes it clear that establishing facts is not necessary here. *Stirlen*, 51 Cal.App.4th at 1527. That court recognized that parties will often need to present evidence as to the contracts "commercial setting, purpose, and effect to aid the court in making the determination. *Id.* Here, where the business reality is something about which the Court is well-informed (i.e., confidential

justification and finds that it is not unconscionable for O'Melveny to reserve its right to seek equitable relief for disclosures of attorney-client privileged information.

**E. Severability of Unconscionable Provisions**

When faced with a contract which is unconscionable, the Court may either refuse to enforce the entire contract if it is "permeated by unconscionability," or it may choose to sever the specific unconscionable provisions of the contract and enforce the remainder. *Armendariz*, 6 P.3d at 695. Citing California Civil Code §§ 1598, 1599, the *Armendariz* court described when to void a contract in whole and when to strike specific provisions and enforce the remainder:

> "[W]here a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void ... [W]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."

*Id.*[9]

The DRP at issue here has one single unconscionable provision. Therefore, the provision requiring confidentiality of the mediation and arbitration proceedings is severed from the DRP arbitration agreement, and the remainder of the DRP is valid and enforceable.

This Court finds that the DRP arbitration agreement is enforceable, and therefore the parties must resolve whether Teshome has in fact agreed to be bound by its terms.

---

legal information), this Court can make a determination from the moving papers.

[9]The *Armendariz* court noted that the basic principles of severability regarding illegal contracts are fully applicable to the doctrine of unconscionability.

## IV. Conclusion

Defendant's motion for order staying litigation and compelling arbitration is DENIED.[10]

July 29, 2005

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT

---

[10] In accordance with the FAA, the Court will issue an order compelling arbitration should the jury find that a contract was formed agreeing to arbitrate. See 9 U.S.C. § 4 ("If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.") Should the jury determine that no such agreement was made, the parties shall proceed with Teshome's lawsuit before this Court.