UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAGNEA TESHOME,<br><br>Plaintiff,<br><br>v.<br><br>O'MELVENY & MYERS, LLP<br><br>Defendant. | CV05-3664 FMC (PJWx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER STAYING LITIGATION AND COMPELLING ARBITRATION** |

This matter is before the Court on Defendant's Motion for Summary Judgment and Order for Staying Litigation and Compelling Arbitration (docket no. 26), filed February 6, 2006. By minute Order dated February 23, 2006, the previously scheduled hearing on these Motions was removed from the Court's calendar, and the Court took the matter under submission. The Court now issues the following Order.

For the reasons set forth below, the Court **GRANTS** the Motion for Summary Judgment and Compels Arbitration.



## I. Evidentiary Objections

### A.  Teshome Declaration

Defendant, O'Melveny & Myers ("O'Melveny") objects to portions of the Declaration of Dagnea Teshome ("Teshome") submitted in support of Plaintiff's Supplemental Opposition to O'Melveny's summary judgment motion.

Defendant first objects to the declaration on grounds that it violates Rule 7-7 of the Local Rules of the U.S. District Court for the Central District of California. Rule 7-7 provides that "[d]eclarations shall contain only factual, evidentiary matter and shall conform as far as possible with the requirements of Fed. R. Civ. P. 56(e)." Rule 56(e) of the Federal Rules of Civil Procedure requires that supporting and opposing affidavits be made on personal knowledge. Because all of the portions of Teshome's declaration to which O'Melveny objects involve his personal knowledge, this objection is overruled.

O'Melveny makes a variety of evidentiary objections to statements in the Teshome declaration as irrelevant, conclusory, going to the ultimate issue, etc. The Court has reviewed the objections and the objections are overruled as to any statements from that Declaration that the Court relied on in this Order.

### B.  Perez-Negron Declaration

O'Melveny objects to the Declaration of Alfredo Perez-Negron in Support of Teshome's Opposition to O'Melveny's summary judgment motion on grounds that it constitutes improper expert opinion. *See* Fed.R.Evid. 702. O'Melveny argues Teshome has failed to properly qualify

Perez-Negron as an expert.

Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FRE 702.

Teshome offers Perez-Negron's expert testimony based on his specialized knowledge of Microsoft Outlook. His expert opinion testimony is competent and relevant to this case and O'Melveny's objection to this evidence is overruled.

## II. Background

### A. Uncontroverted Facts

This civil employment action concerns an arbitration agreement promulgated by O'Melveny. The following summary is based on Plaintiff's complaint and the parties' briefs submitted in connection with this motion.

Plaintiff, Dagnea Teshome ("Teshome") has been an employee of O'Melveny from November 26, 2001 to the present. He is a Senior Database Analyst in the Information Technology Department. Declaration of Tania Hanna in support of Defendant's Motion for Order Staying Litigation and Compelling Arbitration, filed with the Court on June 23, 2005 (the "Hanna Decl.") ¶ 3. Teshome is, and has been since the commencement of his employment, employed by O'Melveny on an at-will basis. *Id.*

O'Melveny's Human Resources Department distributed a Dispute Resolution Program (the "DRP") on August 1, 2002, through the interoffice mail. *Id.* ¶ 6. The DRP states that it "applies to and is binding on all employees . . . hired by - or who continue to work for - the firm on or after November 1, 2002." Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Mem.") at p. 9. The Human Resources Department retained a copy of the labels used for this distribution, and these records show that a label was made for Teshome. Hanna Decl. ¶¶ 6, 8. The DRP was distributed pursuant to O'Melveny's established procedure for interoffice distributions, which has been in place for at least 15 years. *Id.* ¶ 6.

On August 2, 2002, O'Melveny's Human Resources Department sent out an email to all of O'Melveny's employees reiterating that the DRP had been distributed, and instructing anyone who had not received a copy to contact the Human Resources Department (the "DRP email"). *Id.* ¶ 9. Teshome did not respond to this email. Hanna Decl. ¶ 11. O'Melveny's Microsoft Outlook program reflects that the DRP email was received in Teshome's inbox at 12:06 p.m. on August 2, 2002. Declaration of Mark Horak ("Horak Decl.") ¶ 3. An image of Teshome's Outlook inbox taken on October 20, 2005, shows that the DR email still existed in Teshome's inbox. *Id.* Teshome generally opens email from the Human Resources Department. Teshome Dep. at 72:16-19. The DRP was also posted to O'Melveny's intranet, where it continued to be available to Teshome and to all of O'Melveny's employees with access to a computer. Hanna Decl. ¶ 10. Teshome has viewed O'Melveny's intranet many times. Teshome Dep. at 45:23-45:5.

4

**B.   Procedural History**

Teshome filed this action May 17, 2005 asserting ten causes of action arising out of his allegations of racial discrimination in connection with his employment by O'Melveny. Teshome's suit involves the following claims: racial discrimination under 42 U.S.C. § 2000, *et seq.* (Title VII), racial discrimination in violation of California Government Code § 12940, *et seq.* (FEHA), harassment in employment based on race under FEHA, retaliation for having opposed discrimination based on race pursuant to Title VII and FEHA, wrongful demotion in violation of public policy, wrongful denial of promotion in violation of public policy, failure to prevent discrimination based on race under FEHA, failure to investigate discrimination based on race under FEHA, and intentional infliction of emotional distress.

O'Melveny responded by filing a motion to stay the litigation and compel arbitration in accordance with the DRP and pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Federal Arbitration Act ("FAA") §§ 3, 4.[1] The Court denied that motion without prejudice and ordered a jury trial on the issue of formation of agreement to arbitrate. The Court held that "the DRP is binding if Teshome received the DRP in such a way as to put him on notice that he would be bound by the terms." Order dated July 29, 2005, at 6. Because Teshome had declared he did not "believe he 'ever received' either" the DRP document or the DRP email, the Court concluded that Teshome had raised a factual issue on contract formation. *Id.* at 5, 6.

Based on evidence O'Melveny discovered after the Court issued its July 29, 2005 Order, it filed the instant Motion for Summary Judgment on

---

[1] "[T]he FAA has the same application to state law claims . . . as it does to Title VII." *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1302 n.1 (9th Cir. 1994).

5

February 6, 2006. The Motion is based on grounds that the newly acquired evidence shows that Teshome received the DRP in a way that put him on notice that he would be bound by its terms.

### III. Standards

**A.  Summary Judgment**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed.R.Civ.P. 56(c)). "If the moving party meets its initial burden of showing 'the absence of material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987)). The non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex*, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 578 (1986). The court should view inferences

drawn from the facts in the light most favorable to the non-moving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31.

If the factual context makes the non-moving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Id.*; *In re Agricultural Research and Tech. Group*, 916 F.2d 528, 534 (9th Cir. 1990); *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).

## B.   FAA Arbitration Act

The purpose of the FAA is to overcome courts' historic reluctance to enforce arbitration agreements. *See Allied-Bruce Terminix Cos. V. Dobson*, 513 U.S. 265, 270 (1995). Through the FAA, Congress established a liberal federal policy in favor of arbitration and placed arbitration agreements on equal footing with other contracts. *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The FAA directs federal courts to stay litigation and compel parties to arbitrate their disputes when those parties have formed an agreement to do so. *See* 9 U.S.C. § 3.

However, before a court will compel parties to arbitrate, the court must first determine that the parties have in fact *agreed* to arbitrate. *See* 9 U.S.C. §§ 3, 4. Section 4 explicitly states, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Thus, this Court cannot compel Teshome to arbitrate his claims against O'Melveny until it is satisfied that he has actually agreed to do so.

In determining the existence of an agreement to arbitrate, this Court "should apply ordinary state-law principles that govern the formation of contracts." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The U.S. Supreme Court has made it clear that the Court, and not an arbitrator, should determine whether a contractual agreement to arbitrate was formed. In discussing the FAA, the Court stated that "(w)hen there is ... an issue which goes to the 'making' of the agreement to arbitrate--the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *see also AT & T Technologies Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415 (1986) ("[T]he question of arbitrability ... is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").[2]

## IV. Discussion

The issue before the Court is whether Teshome received the DRP in a way that put him on notice that he would be bound by its terms. As the Court noted in its previous order, California law recognizes the formation of employment-related contracts through implied acceptance, such as is alleged

---

[2] California law mirrors federal law in this respect. *See Romo v. Y-3 Holdings, Inc.*, 87 Cal.App.4th 1153, 1158 (Ct. App. 2001)("[T]he right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract ... There is no public policy in favor of forcing arbitration of issues the parties have not agreed to arbitrate.")(internal citations omitted).

8

by O'Melveny to have occurred here.³ In *Craig v. Brown & Root, Inc.*, 84 Cal.App.4th 416, 419 (Ct. App. 2000), an agreement to arbitrate was created by facts very similar to those in the present case. The employer disseminated a Dispute Resolution Program to all employees and informed them that all would be bound by it, just as O'Melveny claims to have done. *Id.* In *Craig*, the court found that acceptance could occur as "implied-in-fact where, as here, the employee's continued employment constitutes her acceptance of an agreement proposed by her employer." *Id.* at 420. In the present case, as a matter of law, the DRP is binding if Teshome received it in such a way as to put him on notice that he would be bound by the terms.

Although O'Melveny's evidence shows that a copy of the DRP was sent to Teshome via interoffice mail,⁴ Hanna Decl. ¶¶ 6, 8, Teshome denies he received the DRP. Plaintiff's Supplemental Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Suppl. Opp.") at 5-7. O'Melveny followed distribution of the DRP, however, with the DRP email, which informed employees about the DRP and instructed anyone who may not have received it to contact the Human Resources Department. Hanna Decl. ¶ 9.

There is ample evidence that Teshome received the DRP email. For example, Teshome admitted in his deposition testimony that O'Melveny sent him the DRP email, that it remained in his Outlook inbox as of

---

³For purposes of this Order, the Court defines "implied acceptance" as the situation where one party presents an offer of a contract to another party and states that acceptance will be effective upon some conditional performance by the other party. When the other party performs that specific act with knowledge that doing so will bind him or her to certain terms, a contract has been formed.

⁴O'Melveny keeps a copy of the mailing labels used in its interoffice mailings. Hanna Decl. ¶¶ 6,7. A label was generated for Teshome for the DRP mailing. *Id.*

9

December 6, 2005, and that it appeared to have been opened. Teshome Dep. at 66:10-25; 68:21-69:11, 80:6-8; 96:3-97:13. The documents Teshome produced to O'Melveny in response to O'Melveny's Request for Documents bolster Teshome's admission that he received and opened the DRP email. Specifically, Teshome produced a "screen shot" of his Outlook email account to O'Melveny that shows the DRP email in his inbox. Nelson Decl. Ex. B, submitted with the Motion, attaching Teshome Response to O'Melveny's First Request for Production of Documents ("Teshome Resp. to RFP") at 98. Typewritten above the "screen shot" image are the words, "You will note that there is an email with the subject 'Dispute Resolution Program' which is grayed out indicating that it was opened on or after 8/2/2002 at 12:06 PM." *Id.* O'Melveny has established that Teshome received notice of the DRP, if not by way of the DRP mailing, then by way of the DRP email.

Teshome argues that the fact that the email is "grayed out" does not prove that it was opened or that he read it. Pl.'s Suppl. Opp. at 13-14. The evidence renders this argument untenable. As noted above, Teshome conceded during testimony that the email "appeared" to have been opened. Teshome testified that he "generally opens emails from the Human Resources Department." Teshome Dep. at 72:16-19. Teshome provides no evidence to indicate that anyone other than he had access to his email. Though the fact that the email was "grayed out" does not prove that Teshome opened the email, there is sufficient evidence to indicate he did.

Teshome argues that he did not receive the DRP email in the sense that the word "receive" is defined as, "to come in possession of (to Acquire), to assimilate through the mind or senses, to accept as authoritative or true (Believe)." Pl.'s Suppl. Opp. at 13-14 (citing Webster's New Collegiate

Dictionary). As O'Melveny correctly argues, this is far beyond what the law requires O'Melveny to prove. Suppl. Mem. at 6, 7. Any argument that O'Melveny provided notice of the DRP to Teshome, but he did not avail himself of this notice, will not suffice. *Id.* at 7 (citing *Vernon v. Drexel Burhnam & Co. Inc.*, 52 Cal.App.3d 706, 714 (1975) ("failure to read a contract before signing is not in itself a reason to refuse its enforcement"); *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal.App.3d 35, 42 (1972) (same)). It was O'Melveny's responsibility to provide notice to Teshome regarding changes in the terms and conditions of his employment. Once O'Melveny provided this notice, however, it became Teshome's obligation to read the information included in it. A party cannot avoid an arbitration agreement merely by claiming he failed to read what was sent to and received by him.[5] *Id.*

O'Melveny has established that even if the copy of the DRP allegedly mailed to Teshome failed to make its way to him, Teshome was nevertheless on notice of the DRP upon receipt of the DRP email. Teshome admits the DRP email was in his inbox and appeared to have been opened. Accordingly, upon notice of the DRP, and upon continued employment at O'Melveny & Myers, as a matter of law, Teshome agreed to abide by the

---

[5]In September 2003, Teshome filed a complaint with the Human Resources Department. Teshome Dep. at 40:7-19, Ex. 4-6; Hanna Decl. ¶ 10; Nelson Decl. Ex. C (attaching Teshome's Supp. Resp. to RFP at 176-81). The form Teshome used was entitled, "Dispute Resolution Program – Form 1 – Employee Complaint 9-02.doc." Teshome Dep. at 121:6-122:8, 124:24-25, 132:10-15. O'Melveny argues Teshome's use of this form proves he was on notice of and used the Dispute Resolution Program. Mem. at 5. The Court finds there is ample evidence that Teshome could have completed the form without knowing it was part of the DRP. For example, the words "Dispute Resolution Program" only appeared on the form in small letters in the bottom left-hand corner. Teshome Dep. at 130:15-17. The Court cannot say, as a matter of law, that by using the form Teshome agreed to abide by the terms of the DRP.

terms of the DRP.

## V. Conclusion

For the reasons stated herein, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment and Compels Arbitration. The Court hereby stays this action pending the arbitration.

May 25, 2006

FLORENCE-MARIE COOPER, JUDGE
UNITED STATES DISTRICT COURT

12